The Honorable Gunner DeLay State Senator 1430 North 50th Street Ft. Smith, AR 72984
Dear Senator DeLay:
You have requested an Attorney General opinion concerning the rates charged for second mortgages by in-state and out-of-state mortgage companies. More specifically, you have asked:
 (1) Can an out-of-state mortgage company contract for a second mortgage at a higher rate than an in-state mortgage company?
 (2) If there is a legal limit on what in-state mortgage companies can charge for a second mortgage, please state your opinion as to what that rate is.
Response
Question 1 — Can an out-of-state mortgage company contract for a secondmortgage at a higher rate than an in-state mortgage company?
As an initial matter, I must point out that your question is very general. A proper analysis of the issue you have raised cannot be conducted on a general basis, but rather, must involve an evaluation of specific information about the particular institutions and contract(s) under consideration and numerous factors that affect those institutions and contracts. In this regard, I note that you have not specified the type of institution you are referring to in using the term "mortgage company." The answer to your question will depend largely on what this term means. More specifically, a crucial factor that will determine the answer to your question is whether the in-state institution in question is insured by the FDIC. Other factual matters that are specific to each situation must also be considered, such as the date of the contract in question and what financial institutions were registered to operate in Arkansas on that date. These issues will be discussed below.
Interest rates in Arkansas are governed generally by Article 19, § 13 of the Arkansas Constitution, as amended by Amendment 60 (the usury law). This constitutional provision limits interest rates as follows:
13. Maximum lawful rates of interest.
(a) General Loans:
 (i) The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.
 (ii) All such contracts having a rate of interest in excess of the maximum lawful rate shall be void as to the unpaid interest. A person who has paid interest in excess of the maximum lawful rate may recover, within the time provided by law, twice the amount of interest paid. It is unlawful for any person to knowingly charge a rate of interest in excess of the maximum lawful rate in effect at the time of the contract, and any person who does so shall be subject to such punishment as may be provided by law.
 (b) Consumer Loans and Credit Sales: All contracts for consumer loans and credit sales having a greater rate of interest than seventeen percent (17%) per annum shall be void as to principal and interest and the General Assembly shall prohibit the same by law.
(c) Definitions: As used herein, the term:
 (i) "Consumer Loans and Credit Sales" means credit extended to a natural person in which the money, property, or service which is the subject of the transaction is primarily for personal, family or household purposes.
 (ii) "Federal Reserve Discount Rate" means the Federal Reserve Discount Rate on ninety-day commercial paper in effect in the Federal Reserve Bank in the Federal Reserve District in which Arkansas is located.
(d) Miscellaneous:
 (i) The rate of interest for contracts in which no rate of interest is agreed upon shall be six percent (6%) per annum.
 (ii) The provisions hereof are not intended and shall not be deemed to supersede or otherwise invalidate any provisions of federal law applicable to loans or interest rates including loans secured by residential real property.
 (iii) The provisions hereof revoke all provisions of State law which establish the maximum rate of interest chargeable in the State or which are otherwise inconsistent herewith.
Ark. Const., Art. 19, § 13, as amended by Const. Amend. 60.
The foregoing state limitation on interest rates does not apply in situations governed by conflicting federal laws. Id. at § (d)(ii).
Various federal laws have, from time to time, preempted Arkansas' usury law, thus allowing certain entities to charge higher rates of interest on certain types of loans during certain time periods. For a discussion of several such laws, see Op. Att'y Gen. No. 97-157. Preemption of this nature led to problems of disparity between out-of-state institutions and in-state institutions. For example, when out-of-state banks began to be allowed to establish branches in Arkansas, problems of disparity in interest rates occurred, because under various federal laws, the out-of-state banks were allowed, for certain contracts, to charge the interest rate that was allowed under the laws of their home states, which was often higher than the rate allowed under Arkansas law. See, e.g.,15 U.S.C. § 631 et seq. and 12 U.S.C. § 85.
In 1999, Congress enacted the Gramm-Leach-Bliley Financial Modernization Act, for the purpose of addressing this problem of disparity in situations involving FDIC-insured institutions. Section 731 of this Act, which is codified at 12 U.S.C. § 1831u(f), amended the FDIA so as to allow any FDIC-insured institution (state or federally-chartered) to charge the higher of the following two interest rates on any loan (this broad language would appear to include second mortgages): (1) the maximum rate that could be charged on a similar loan by any federally-insured out-of-state institution (under that institution's home state's laws) that has established a branch in Arkansas under the federal law allowing such branch (12 U.S.C. § 1831u); or (2) the maximum rate that could be charged on a similar loan by a federally-insured in-state institution under the laws of the home state.
As a result of the 1999 Act, a federally-insured Arkansas institution can contract for the rate of interest that can be charged in the home state of any federally-insured out-of-state institution that has established a branch in Arkansas under federal law. If that rate of interest is higher than the limitation created by Arkansas' usury law, that Arkansas institution will not be bound by Arkansas law with regard to the interest rates on that contract. It should be noted that Section 731 of the Gramm-Leach-Bliley Act was upheld against a Commerce Clause challenge inJohnson v. Bank of Bentonville, 122 F. Supp.2d 994 (W.D. Ark. 2000).
Thus, in order to determine the limit on the interest rate that is allowable on any given contract, it will be necessary to know such facts as whether the institution in question is FDIC-insured, thus falling within the parity-protection of 12 U.S.C. § 1831u(f), and the highest rate of interest allowed by the law of any state that is the home state of a federally-insured institution that has, at the time of the contract, established a branch in Arkansas under federal law. It will therefore also be necessary to know the date of the contract.
If the institution in question is not FDIC-insured and does not fall within the parity protection of 12 U.S.C. § 1831u(f), other federal protections may be available to it under other federal law, depending on the nature of the institution and the types of loans it is making. For example, certain HUD loans are not subject to the strictures of Arkansas' usury law. See, e.g., 12 U.S.C. § 1735f-7. In order to determine whether this or other federal protections are available, it would be necessary for me to know more specific information about the institution and the type of loan in question. A general review of all possible federal preemptions of Arkansas' usury law is well beyond the scope of an Attorney General opinion.
Because such specific information is crucial to the issue you have raised, I cannot draw any specific conclusions in answer to your question. Any given contract must be analyzed in light of its particular facts and how those facts position the contract in light of applicable state and federal laws.
Question 2 — If there is a legal limit on what in-state mortgagecompanies can charge for a second mortgage, please state your opinion asto what that rate is.
Arkansas' limit on interest rates is set forth in Article 19, § 13 of the Arkansas Constitution, as amended by Amendment 60, which is quoted in full above in response to Question 1.
For the reasons stated in response to Question 1, I cannot draw any general, abstract conclusions as to how this state limitation will flesh out. As indicated, every contract must be analyzed on a case-by-case basis.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh